IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., AS BROADCAST LICENSEE OF THE OCTOBER 12, 2013 TIMOTHY BRADLEY V. JUAN MANUEL MARQUEZ WBO WELTERWEIGHT CHAMPIONSHIP FIGHT PROGRAM,<br><br>*Plaintiff*,<br><br>vs.<br><br>EBRAHIM REZA NIYAKAN, A/K/A EBRAHIM REZA NIYAKAN, JR., INDIVIDUALLY, AND D/B/A BOTTOMS UP SPORTS BAR & GRILL A/K/A BOTTOMS UP SPORTS BAR,<br><br>*Defendant*. | 5-16-CV-01003-DAE |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns the Motion for Final Default Judgment filed by Plaintiff J&J Sports Productions Inc. ("J&J Sports"). *See* Dkt. No. 7. This motion has been referred to the undersigned for report and recommendation pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) & (d) to Appendix C of the Local Rules for the United States District Court for the Western District of Texas.[1] Plaintiff's lawsuit arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (the "FCA"), and therefore the District Court has federal question jurisdiction over this action, *see* 28 U.S.C. § 1331. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C.

---

[1] This motion was initially referred to United States Magistrate Judge John W. Primomo but was administratively reassigned to the undersigned's docket upon Judge Primomo's retirement.

1

§ 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that the Motion for Final Default Judgment, Dkt. No. 7, be **GRANTED IN PART** as specified herein.

## I. Background

J&J Sports alleges in its Complaint that Defendant Ebrahim Reza Niyakan, a/k/a Ebrahim Reza Niyakan, Jr., individually, and d/b/a Bottoms Up Sports Bar & Grill a/k/a Bottoms Up Sports Bar ("Niyakan") illegally intercepted and exhibited at Bottoms Up Sports Bar the closed-circuit telecast of the October 12, 2013 Timothy Bradley v. Juan Manual Marquez WBO Welterweight Championship Fight Program. *See* Dkt. No. 1. J&J Sports properly served Niyakan with its Complaint on November 7, 2016. Service was returned executed on November 9, 2017. *See* Dkt. No. 5. Niyakan did not answer or file any other responsive pleading within the time required, and he still has not filed a responsive pleading as of the date of this order. *See* Fed. R. Civ. P. 12(a)(1)(A). On August 17, 2017, J&J Sports requested entry of default, *see* Dkt. No. 6, and the Clerk complied later that day with an entry of default on the docket. *See* Dkt. No. 8.

J&J Sports now seeks a final default judgment on its claim under § 605 of the FCA. Although J&J Sports cites FCA § 553 in its Complaint, it does so in the context of raising a claim for relief under whichever of either § 605 or § 553 properly applies, but not both. It is clear that only § 605 could apply here because § 605 applies to the unauthorized interception of signals through radio or satellite, but not cable, communications. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). Section 553 applies in the opposite scenario, which is not at issue here. *See* Dkt. No. 7 ("The transmission of the Event originated via satellite."). The undersigned, therefore, construes the present motion seeking entry of a final default judgment as confirming that J&J Sports only raises a claim for relief under § 605.

As part of the requested default judgment, J&J Sports also seeks an award of: (1) statutory damages in the amount of $10,000, *see* 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $50,000 for Niyakan's alleged willful acts, *see* 47 U.S.C. § 605(e)(3)(C)(ii); (3) attorneys' fees in the amount of one-third of J&J Sports' total recovery or, in the alternative, a lodestar award of $1,000; and (4) costs and post-judgment interest.

## II. Analysis

*Default.* Niyakan failed to answer or otherwise defend against J&J Sports' claims, as demonstrated by the affidavit of J&J Sports' attorney David M. Diaz, which is included with J&J Sports' motion for entry of default. *See* Dkt. No. 6, Ex. A. Diaz also includes a sworn statement with affidavit, explaining that "Defendant is not believed to be a minor, incompetent or on active duty in the military service of the United States of America." *See* 50 U.S.C. § 3931(b)(1); Fed. R. Civ. P. 55(b)(2). The rules provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Accordingly, the Clerk properly entered default.

*Default Judgment.* Once default has been entered, and upon a party's motion, a court may enter a default judgment. Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "[A] party," however, "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). In considering whether such a basis is presented, a court accepts as true the

complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Accordingly, J&J Sports will be entitled to a default judgment if facts alleged in the Complaint state a claim upon which relief may be granted. They do.

Section 605 of the FCA prohibits an unauthorized person from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 605 further prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. *Id.* The FCA affords a private right of action to "[a]ny person aggrieved by any violation of" the Act. 47 U.S.C. § 605(e)(3)(A). Further, "[t]he FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *Joe Hand Promotions, Inc. v. Macias*, No. H–11–1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012). Thus, to state a claim for a violation under § 605(a), a plaintiff must allege that the defendant "intercepted or otherwise unlawfully appropriated [the plaintiff's] transmission" or that the defendant exhibited an intercepted transmission without authorization. *DIRECTV Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005).

J&J Sports alleges in its Complaint that it is the "license company exclusively authorized to sublicense the closed-circuit telecast" of the Bradley-Marquez Championship Fight in Texas and that the fight could only be exhibited in a Texas commercial establishment if contractually authorized by J&J Sports. Dkt. No. 1 ¶¶ 5-6. J&J Sports further alleges that, pursuant to its authority to sublicense the fight, it "contracted with various establishments throughout Texas and

4

granted such establishments the right to broadcast the [fight] in exchange for a fee." *Id*. ¶ 7. Defendant Niyakan did not contract with J&J Sports or any of its agents to obtain the rights to broadcast the fight. *Id*. ¶ 9. J&J Sports further alleges in the Complaint that transmission of the fight "originated via satellite and was electronically coded or 'scrambled'" such that "[i]n order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment." *Id*. ¶ 8. Only establishments that contracted with J&J Sports were provided the capability for receiving and decoding the signal. *Id*. ¶ 10. Finally, according to the Complaint, on October 12, 2013, Niyakan, either by satellite transmission or through unauthorized receipt over a cable system, willfully intercepted, received, or assisted in the receipt of the telecast of the fight and then transmitted, divulged, and published it to patrons. *Id*. ¶ 11.

Accepting these allegations as true, the facts alleged are sufficient to state a claim for a violation of § 605(a) of the FCA. Accordingly, default judgment is appropriate on this claim, and the only remaining issues relate to damages. *See Shipco*, 814 F.2d at 1014.

*No Hearing Is Needed on Damages.* Damages ordinarily may not be awarded via default judgment "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But where the amount of damages can be "determined with certainty by reference to the pleadings and supporting documents," and where a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993) (a district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment). Here, J&J Sports does not request a hearing, has moved only for statutory as opposed to actual damages, and has attached detailed affidavits to its

5

motion from which the Court can calculate damages. An evidentiary hearing to determine damages is therefore unnecessary.

*Statutory Damages of $4,800.* Under the FCA, an aggrieved party may be awarded either: (1) "the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages," 47 U.S.C. § 605(e)(3)(C)(i)(I), or (2) statutory damages for each violation "in the sum of not less than $1,000 or more than $10,000, as the court considers just," 47 U.S.C. § 605(e)(3)(C)(i)(II). J&J Sports seeks $10,000 in statutory damages—the maximum amount allowable—asserting that "it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained as a result of Defendant's unlawful actions." *See* Dkt. No. 7 ¶ 10.

In the Western District of Texas, courts typically award prevailing FCA plaintiffs a flat sum of statutory damages. This sum is derived from the costs the defendant would have incurred to purchase the rights to the broadcast, plus an additional amount sufficient to deter future violations and account for additional damages incurred by the plaintiff, such as the potential erosion of the plaintiff's customer base and profits made by the defendant in selling food and drinks to patrons.[2]

---

[2] *See e.g.*, *J&J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *5 (W.D. Tex. May 2, 2016) (awarding plaintiff $3,500 in statutory damages where plaintiff charged a license fee of $2,200 to comparably sized commercial establishments and plaintiff submitted evidence that defendant's actions eroded its customer base); *G&G Closed Circuit Events, LLC v. Cisneros*, No. 5:15-CV-302-DAE, 2016 WL 1322485, at *3 (W.D. Tex. Apr. 1, 2016) (similar award); *Joe Hand Promotions, Inc. v. Ol' River Hideaway, LLC*, No. 5:15-CV-187-DAE, 2016 WL 590251, at *3 (W.D. Tex. Feb. 11, 2016) (similar award); *J&J Sports Prods., Inc. v. Chucho's Mexican Rest., Inc.*, No. 1-15-CV-361 RP, 2015 WL 7301183, at *3 (W.D. Tex. Nov. 18, 2015) (similar award); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (similar award).

The record and an affidavit from J&J Sports' counsel Thomas P. Riley provide the necessary details on statutory damages here. *See* Dkt. No. 7, Ex. A (Riley Aff.). According to Riley, had Niyakan lawfully purchased the rights to show the fight, he would have incurred a sublicense fee based on the capacity of his establishment. *See id*. ¶ 7 (incorporating by reference the Rate Card for the fight, attached as Exhibit A-3 to Riley's affidavit). The record reveals Niyakan's establishment has a maximum capacity of approximately 75 people, which would have resulted in a sublicense fee of $1,600. *See* Exs. A-2 & A-3 to Riley Aff. In this circuit, to reach a "reasonable award" that takes into account direct and indirect losses suffered, as well as the need to deter future violations, courts generally "treble what would have been the cost had Defendants followed the law." *Chucho's Mexican Rest.,* 2015 WL 7301183, at *3. Accordingly, J&J Sports should be awarded $4,800 in statutory compensatory damages.

*Additional Damages of $4,800.* FCA violations "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," authorize "the court in its discretion [to] increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). J&J Sports maintains Niyakan acted "willfully" as he could not have "innocently" accessed the broadcast; the satellite signal was "scrambled" and was not available to the general public. *See* Dkt. No. 7 ¶ 16; Riley Aff. ¶¶ 6-10; Compl. ¶ 8. Niyakan's violation, according to J&J Sports' allegations and affidavits, would have required the use of specialized equipment such as an unauthorized decoder or satellite access card. Compl. ¶ 8; Riley Aff. ¶ 10. Similar allegations have justified a finding of willfulness in other cases. *See, e.g.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *3 (citing various authorities); *see also Garcia*, 546 F. Supp. 2d at 385 (concluding that defendant's violation was willful "[b]ecause of the extreme unlikelihood that Defendant could inadvertently

have acquired the signal to display the fight, coupled with its failure to file an answer denying Plaintiff's allegations on this issue").

J&J Sports also presents evidence that Niyakan exhibited the fight for either direct or indirect commercial gain—J&J Sports sold food and beverages and exhibited the event in an urban area to 15 to 30 patrons. *See* Dkt. No. 7, Ex. A-2 to Riley Aff. Again, similar evidence has previously justified a finding that commercial gain motivated a defendant's actions. *See e.g.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *4 (finding commercial motive where defendant showed the event to its 26 patrons while offering alcoholic beverages for sale). Accordingly, an award of additional damages based on willfulness and commercial motive is appropriate to "send a strong signal that such unauthorized activity will not be profitable." *Garcia*, 546 F. Supp. 2d at 386.

Although additional damages are warranted, the $50,000 award requested by J&J Sports is excessive. Courts typically apply a multiplier of the statutory award or sublicense cost, considering the number of television screens used to broadcast the event, the number of patrons present, whether the defendant imposed a cover charge or advertised the event, whether the defendant was a repeat offender, and the need to deter future violations.[3] At the same time, an

---

[3] *See e.g., Bandera Cowboy Bar*, 2016 WL 2349123, at *5 (additional damages awarded of two times the statutory award (for a total of $7,000) where defendant assessed a five dollar cover charge and 31 to 34 patrons attended); *Chucho's Mexican Rest.,* 2015 WL 7301183, at *4 (additional damages award of $2,200 (the amount it would have cost the defendant to sublicense the event) reasonable where event was exhibited on a single television screen and defendant did not charge a cover or advertise the event); *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (additional damages award of four times the statutory damages (for a total of $20,000) reasonable where plaintiff presented evidence that approximately 85 to 125 people attended, defendant showed the event on nine different screens, and defendant assessed a five dollar cover charge); *Garden City Boxing Club, Inc. v. Sacks*, No. CIV.A. B-07-97, 2008 WL 1711478, at *3 (S.D. Tex. Apr. 10, 2008) (awarding plaintiff three times the amount of statutory damages (for a total of $6,000) where defendant assessed a twenty dollar cover charge, exhibited the event on three television screens,

award of additional damages should not "impose[] an insurmountable financial burden," especially where the defendant is not a major chain. *Garcia*, 546 F. Supp. 2d at 386.

Here, these considerations balance to produce a more modest—but still meaningful—award of additional damages in the amount of $4,800 (equal to, and yet also in addition to, the amount of statutory damages). *See, e.g.*, *J&J Sports Productions, Inc. v. Perez-Delarosa, LLC*, No. CIV.A. 14-992, 2015 WL 1482507, at *2 (E.D. La. Mar. 31, 2015) (awarding $4,000 in additional damages (the equivalent of the statutory damages awarded) where there was no cover charge, no repeated violations, and only a "very small number of patrons" were present). The evidence indicates Niyakan used eight screens to exhibit the event. *See* Dkt. No. 7, Ex. A-2 to Ex. A (Riley Aff.). But only 15 to 30 patrons attended, and Niyakan did not impose a cover charge. *Id.* There is no evidence that Niyakan is a repeat offender or that he advertised the event to attract a greater audience. The Court is also mindful that additional damages should not drive a defendant—here, an establishment that does not appear to be a chain—out of business. *Garcia*, 546 F. Supp. 2d at 386.

*Attorneys' fees.* The FCA provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Accordingly, an award of attorneys' fees is mandatory for a prevailing party in a FCA case, although the amount awarded must be reasonable. *Id.*; *see also J&J Sports Prods., Inc. v. Rivera*, No. EP-14-CV-00343-KC, 2015 WL 1137473, at *6 (W.D. Tex. Mar. 12, 2015).

Here, a fair and equitable award of fees is derived from the lodestar rate, *i.e.*, the hours the attorneys actually expended times a reasonable hourly rate. *See, e.g.*, *Chucho's Mexican*

---

and advertised the event on its business sign, but only 14 patrons attended and defendant was not a repeat offender).

*Rest.*, 2015 WL 7301183, at *5 (declining one-third contingent fee requested and instead awarding fees according to lodestar method); *Rivera*, No. CIV.A. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. July 14, 2014) (finding it "more equitable" to apply the lodestar as opposed to one-third contingency fee); *J&J Sports Prods., Inc. v. Rodriguez*, No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D. Tex. July 31, 2013) (same). Diaz details in his affidavit his experience, and he provides an hourly rate of $250 for similar cases and notes he has expended or will expend a minimum of four hours on this litigation through the preparation of the motion for default judgment. *See* Diaz Aff. Nothing in Diaz's Affidavit justifies departing from the lodestar rate based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Accordingly, an award of $1,000 in attorneys' fees is reasonable.

J&J Sports may request a fees award for post-trial and appellate services when, and if, any such fees are actually incurred. *See Rivera,* 2014 WL 3533472, at *3 (rejecting as "speculative" and "premature" plaintiff's request for an award of fees in the event that post-trial, pre-appeal, and appellate services are required); *Kingvision Pay–Per–View, Ltd. v. Guerrero*, No. 3:08–CV–1970–G (BF), 2009 WL 1973285, at *5 (N.D. Tex. Jul. 7, 2009) (holding that a plaintiff may apply for a contingent award for post-trial services if and when such fees are incurred).

Finally, J&J Sports should be awarded its reasonable costs if it timely files a bill of costs in the form required by the Clerk of the Court and supported by appropriate documentation. *See* Local Rule CV-54.

### III. Conclusion and Recommendation

Accordingly, having considered Plaintiff J&J Sports' motion, the case file, and the lack of response from Defendant, the undersigned recommends that Plaintiff's Motion for Final Default Judgment, Dkt. No. 7, be **GRANTED IN PART** as to Plaintiff's request for damages, fees, and costs, as follows: (1) $4,800 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $4,800 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); (3) $1,000 in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii); and (4) costs in an amount to be determined pursuant to the procedure specified in Western District of Texas Local Rule CV-54. Defendant should also pay post-judgment interest, to be calculated and compounded pursuant to 28 U.S.C. § 1961, until the judgment is paid in full.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive, or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-

11

52(1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 9th day of January, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE